# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROBERT JAMES BRADWELL, JR.,

      Petitioner,

-vs-                                    Case No.  8:18-cv-1899-CEH-AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## **ORDER**

      Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1). Respondent filed a response opposing the petition (Doc. 11), to which Petitioner replied (Doc. 15). Upon consideration, the petition will be denied.

## I. BACKGROUND AND PROCEDURAL HISTORY

      Petitioner was charged with first-degree murder and aggravated child abuse (Doc. 12-2, Ex. 1, docket pp. 50-51). He was convicted as charged (*id.*, docket p. 401) and sentenced to life in prison on the murder conviction, and 30 years in prison (concurrent) on the aggravated child abuse conviction (Doc. 12-3, Ex. 1, docket pp. 146-49). The convictions and sentences were affirmed on appeal (Doc. 12-4, Ex. 5).

Petitioner filed a motion, supplemental motion, and amended motion under Rule 3.850, Fla.R.Crim.P., alleging twelve grounds for relief (Doc. 12-4, Exs. 7-9). The state post-conviction court denied nine claims, reserved ruling on one claim (Ground Ten), and directed the State to respond to the remaining two claims (Grounds Two and Eleven) (Doc. 12-4, Ex. 10, docket pp. 495-526). After the State responded (Doc. 12-6, Ex. 11), the state post-conviction court continued to reserve ruling on Ground Ten and ordered an evidentiary hearing on Grounds Two and Eleven (*Id.*, Ex. 12). After the evidentiary hearing (*id.*, Ex. 13), Grounds Two and Ten were denied, and Ground Eleven was dismissed with prejudice (Doc. 12-7, Ex. 14). The denial of the Rule 3.850 motion was affirmed on appeal (*Id.*, Ex. 17).

Petitioner filed a petition for a writ of habeas corpus alleging ineffective assistance of appellate counsel on direct appeal (Doc. 12-7, Ex. 21). The petition was denied (*Id.*, Ex. 23).

Finally, Petitioner filed his federal habeas petition in this Court alleging seven grounds for relief (Doc. 1).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir.

2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Under the AEDPA, habeas relief may not be granted regarding a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States

Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Standard for Ineffective Assistance of Counsel**

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's

4

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Claims that appellate counsel provided ineffective assistance are also analyzed under the two-part test in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir.1991). To establish a claim, Petitioner must show that appellate counsel's performance was objectively unreasonable, and there is a reasonable probability that, but for this performance, Petitioner would have prevailed on his appeal. *Robbins*, 528 U.S. at 285–86.

## C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State...if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court

extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *see also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## III. ANALYSIS

**GROUND ONE: THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTION FOR JUDGMENT OF ACUITTAL [sic] WHERE THE EVIDENCE WAS CIRCUMSATNTIAL [sic] AND THE STATE FAILED TO PRESENT EVIDENCE EXCLUDING A REASONABLE HYPOTHESIS OF INNOCENCE. (Doc. 1, p. 3)**

Petitioner contends the trial court erred in denying his motion for judgment of acquittal because the evidence presented was purely circumstantial and failed to eliminate all reasonable hypotheses of innocence. He asserts there was no direct evidence he killed the victim, and the State's expert conceded that the "blunt impact" to the victim's stomach could have been caused by another child jumping onto the victim.

8

He argues a judgment of acquittal was appropriate because the State's expert witness established a reasonable hypothesis of innocence.

Respondent contends to the extent the claim attempts to assert a denial of federal due process, Petitioner failed to exhaust it in state court, because he failed to present it as a federal claim on direct appeal of his conviction, and the claim is now procedurally defaulted (Doc. 11, pp. 14-17). Respondent additionally contends even if Ground One was not procedurally defaulted, it is without merit (*Id.*, pp. 17-25).

The state court record demonstrates that in Petitioner's brief on direct appeal, he argued the trial court erred by denying his motion for judgment of acquittal because the evidence failed to satisfy Florida's circumstantial evidence rule (Doc. 12-4, Ex. 2, docket pp. 281-89). He framed his claim of trial court error in terms of state law without making any reference to federal law. In the body of his argument, he made no reference to the United States Constitution or federal law, and he cited no federal cases (*Id.*). Nothing in Petitioner's brief put the state court on notice that the issue was presented as a federal due process claim. Petitioner's claim of trial court error regarding the denial of the motion for judgment of acquittal was not fairly presented to the state court as a federal constitutional claim and therefore is unexhausted. *See, e.g., Pearson v. Sec'y, Dep't of Corr.*, 273 F. App'x 847, 850 (11th Cir.2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though

Florida courts assess sufficiency of evidence under standard identical to federal standard).

Now, any further attempt at exhaustion in the state courts would be futile, because Petitioner's claim would be procedurally barred under Florida law. *See Rodriquez v. State*, 919 So.2d 1252, 1262 n. 7 (Fla.2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); *v. State*, 445 So.2d 323, 325 (Fla.1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Because Petitioner cannot return to state court to exhaust a federal claim in a second direct appeal, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Petitioner has not established that an exception applies to overcome the default.

The claim likewise warrants no relief on the merits because it presents only an issue of state law based upon Florida's circumstantial evidence rule, which is not cognizable in federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). And to the extent he attempts to present a federal due process violation claim based on the State's failure to prove each element of the offense (Doc. 1, p. 4), the claim warrants no relief because Petitioner fails to identify which element of which offense the State failed to prove. *See Tejada v. Duggar*, 941 F.2d 1551, 1559 (11th Cir.1991) (habeas petitioner is not entitled to evidentiary

hearing when claims are "merely conclusory allegations unsupported by specifics" (internal quotation marks omitted)). Ground One is therefore denied.

**GROUND TWO: THE TRIAL COURT ERRED BY ADMITTING TESTIMONY RELATING TO OLD INJURIES NOT ATTRIBUTED TO THE PETITIONER THAT DID NOT CONTIBUTE [sic] TO THE VICTIM'S DEATH (Doc. 1, p. 4)**

Petitioner alleges the victim had injuries to her skull and brain that did not contribute to her death and were suffered before the time of her death. According to Petitioner, defense counsel's pre-trial motion in limine was granted prohibiting any reference to these injuries. But the trial court allowed the State to: 1) question its expert medical witness about those injuries; and 2) enter into evidence a photograph of those injuries. Petitioner contends admitting that evidence violated his due process rights. He argues the evidence was irrelevant and prejudicial because there was no clear and convincing evidence: 1) he caused those injuries; and 2) those injuries contributed to the death of the victim.

Respondent contends the claim is unexhausted and procedurally barred (Doc. 11, pp. 25-26). The Court agrees. Petitioner raised the issue on direct appeal (Doc. 12-4, Ex. 2, docket pp. 289-92) but neither labeled the issue "federal," nor cited the federal constitution or a case deciding a similar claim on federal law. *Reese*, 541 U.S. at 32. Rather, he solely argued the evidence was irrelevant and inadmissible under Florida law (*Id.*).

If Petitioner returned to state court to raise the claim, the state court would deny the claim as procedurally defaulted. Fla. R. Crim. P. 3.850(c) ("This rule does not

authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Petitioner has not established that an exception applies to overcome the default. Accordingly, because Ground Two is unexhausted and procedurally barred from federal review, it warrants no relief. *Snowden*, 135 F.3d at 736.

**GROUND THREE: THE STATE OF FLORIDA VIOLATED THE PETITIONER'S CONSTITUTIONAL RIGHTS WHEN THE PROSECUTOR IMPROPERLY COMMENTED ON THE PETITIONER'S RIGHT TO REMAIN SILENT AND IMPROPERLY SHIFTED THE BURDEN OF PROOF TO THE PETITIONER (Doc. 1, p. 6)**

Petitioner contends his rights to due process under the Fifth and Fourteenth Amendments were violated when, during closing arguments, the prosecutor made improper comments that violated Petitioner's right to remain silent and shifted the burden of proof to him.  He argues that the prosecutor improperly commented on his right to remain silent in stating:

> . . .Now, is there any evidence in this case that Keyondre Lee caused these injuries? Is there one piece of evidence? Did the defendant when he walked in, did he say: They were playing and I think he may have jumped on her. Or I think he may have done this to her. When he walked in there I separated them. When I walked in there she told me he jumped on me. Anything like that from the defendant's mouth?....

(Doc. 1, p. 6).

Respondent contends the claim is unexhausted and procedurally barred (Doc. 11, pp. 30-31). The Court agrees. Petitioner raised the issue on direct appeal (Doc. 12-4, Ex. 2, docket p. 299) but neither labeled the issue "federal,"

nor cited the federal constitution or a case deciding a similar claim on federal law. *Reese*, 541 U.S. at 32. He therefore failed to alert the state court of the federal nature of the claim.

If Petitioner returned to state court to raise the federal claim, the state court would deny the claim as procedurally defaulted. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Petitioner has not established that an exception applies to overcome the default.

Moreover, the State argued both that the claim was not preserved for appellate review because it was never raised in the trial court and was without merit (Doc. 12-4, Ex. 3, docket pp. 353-55). The appellate court affirmed Petitioner's convictions without a written opinion (*Id.*, Ex. 5). Therefore, this claim is procedurally barred from federal habeas review because it was procedurally defaulted in the state appellate court, having not been properly preserved for review.

In Florida, "[f]or an issue to be preserved for appeal, it must be presented to the lower court, and the specific legal argument or ground to be argued on appeal must be part of that presentation." *Doorbal v. State*, 983 So. 2d 464, 492 (Fla. 2008). Petitioner did not present the argument he makes here, and that he made in the state appellate court, to the state trial court (*see* Doc. 12-4, Ex. 1,

docket pp. 163-64). The state appellate court affirmed without opinion and this Court "may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this [issue]. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993).

"[C]onsistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court," the Supreme Court has held that, "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465 (2009). Because Petitioner failed to present his claim to the state trial court, the denial of the claim by the state appellate court is presumed to rest on the independent and adequate state ground of lack of preservation, and therefore this claim is procedurally defaulted.

Petitioner fails to demonstrate cause for the default and prejudice. And he cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Petitioner satisfies neither exception to procedural default, Ground Three is procedurally barred from federal review.

Even if Ground Three were not procedurally barred, it would fail on the

merits. The prosecutor's comments were proper, considering defense counsel

argued the victim's brother could have caused the fatal injuries (Doc. 12-4, Ex. 1,

docket p. 128, 135-37). *See United States v. Hiett*, 581 F.2d 1199, 1204 (5th

Cir.1978) (a "prosecutor, as an advocate, is entitled to make a fair response to the

arguments of defense counsel."). Moreover, the prosecutor's comments referred

to Petitioner's failure to inform medical personnel at the hospital how the victim

sustained her injuries, not his silence after he was arrested (Doc. 12-4, Ex. 1,

docket pp. 163-67).  A prosecutor may comment during closing argument on a

defendant's prearrest pre-*Miranda*[1] silence. *See United States v. Rivera*, 944 F.2d

1563, 1567–68 (11th Cir.1991) (holding that the Government may comment on a

defendant's silence if it occurred before he is arrested and given his *Miranda*

warnings).

Ground Three is unexhausted and procedurally barred from federal review.

Moreover, the claim is without merit. Accordingly, Ground Three warrants no

relief.

**GROUND FOUR: THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF THE PETITIONER'S PRIOR FELONY RECORD VILOTATING [sic] HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL (Doc. 1, pp. 7-8)**

---

1 Established in *Miranda v. Arizona*, 384 U.S. 436 (1966), the Fifth Amendment right to remain silent is intended to operate prophylactically to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings. *Id*. at 478-79.

Petitioner contends his rights under the Fifth, Sixth, and Fourteenth Amendments were violated when the state trial court admitted evidence of his prior felony record. His prior record, he argues, was erroneously admitted under Section 90.806(1), Fla. Stat. He further argues the prejudice caused to him by admission of his prior record far outweighed the probative value of the evidence.

Respondent argues Ground Four is unexhausted, procedurally barred, and merits no relief because it is actually a state-law claim not cognizable on federal habeas review (Doc. 11, pp. 34-38). The Court agrees.

In Issue V of his Initial Brief on direct appeal, Petitioner argued that admission of his felony record was erroneous under Florida law, specifically Sections 90.806(1) and 90.403, Fla. Stat. (Doc. 12-4, Ex. 2, docket pp. 300-07). He neither labeled the issue "federal," nor cited the federal constitution or a case deciding a similar claim on federal law (*Id.*). He failed to alert the state appellate court he was alleging a denial of due process and fair trial claim under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Accordingly, he failed to exhaust the federal nature of this claim.

If Petitioner returned to state court to raise the federal claim, the state court would deny the claim as procedurally defaulted. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Petitioner has not established that an exception applies to overcome the default.

To the extent Petitioner asserts in Ground Four that the state trial court erred under Florida law in admitting his prior felony record, this is a state law issue that is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (federal habeas relief is available to correct constitutional errors). It is not the province of this Court to review the state trial court's evidentiary rulings under state law, even if Petitioner couches his claim as a denial of federal due process. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) (per curiam) (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976) ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'")).

Petitioner's federal due process claim is procedurally barred from review. And his challenge to the state court's evidentiary ruling under Florida law is not cognizable on federal habeas review. Ground Four therefore warrants no relief.

**GROUND FIVE: APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILING TO ARGUE THAT THE EVIDENCE USED TO CONVICT THE PETITIONER WAS INSUFFICIENT TO SUPPORT A CONVICTION OF FIRST DEGREE MURDER OF A CHILD AND AGGRAVATED CHILD ABUSE (Doc. 1, p. 9).**

Petitioner contends his appellate attorney was ineffective in failing to argue on direct appeal the evidence was insufficient to support the convictions for first-degree murder and aggravated child abuse. Specifically, he argues there was no evidence he struck the victim and caused her death.

17

This claim warrants no relief for a few reasons. First, the claim is procedurally barred from review because the specific claim Petitioner presents here was not presented to the state court. Although Petitioner argued, in a vague and general manner, in his state petition for writ of habeas corpus that appellate counsel was ineffective in failing to raise a claim of insufficiency of the evidence, he failed to specifically argue there was no evidence showing he struck the victim and caused her death (Doc. 12-7, Ex. 21, docket pp. 408-11).

To exhaust state remedies under 28 U.S.C. § 2254(b), (c), "the substance of a federal habeas corpus claim must first be presented to the state courts." *Picard*, 404 U.S. at 275-75. Therefore, "where the factual bases underlying [a] petitioner's federal claim are significantly different from those underlying his state claim," state remedies are unexhausted. *Burns v. Estelle*, 695 F.2d 847, 850 (5th Cir.1983) (citation omitted). The factual basis of Petitioner's claim is different in his federal petition than in his state petition alleging ineffective assistance of appellate counsel. For the first time he argues there was insufficient evidence showing he struck and killed the victim.

 He therefore "has not exhausted his state remedies regarding his claim of ineffective assistance of counsel because the factual details forming the basis of his present claim (failure to argue on appeal there was insufficient evidence he stuck and caused the death of the victim) were not presented to the state court when he raised the issue there." *Id*. at 849. The present claim of ineffective assistance of appellate counsel is materially broader than the one he presented to the state court. Consequently, his claim is unexhausted.

The unexhausted claim is procedurally barred because it was not presented to the state court and would be barred if it now was presented there. *See* Fla.R.App.P. 9.141(c)(4)(B) (stating that "[a] petition alleging ineffective assistance of appellate counsel shall not be filed more than 2 years after the conviction becomes final on direct review unless it alleges under oath with a specific factual basis that the petitioner was affirmatively misled about the results of the appeal by counsel."). Since Petitioner has not established cause to excuse his default, the claim is procedurally barred from review.

Second, appellate counsel was not ineffective in failing to argue there was insufficient evidence showing Petitioner struck and caused the death of the victim because the issue was not preserved for appeal. In Florida, "in order for an argument to be cognizable on appeal, it must be the specific contention asserted as the legal ground for the objection, exception, or motion below." *Steinhorst v. State*, 412 So.2d 332, 338 (Fla.1982). Florida appellate courts decline to review the denial of a motion for judgment of acquittal where the motion failed to make the specific argument raised on appeal. *See e.g., Woods v. State*, 733 So.2d 980, 984–85 (Fla.1999) (rejecting the appeal of the denial of a motion for judgment of acquittal that failed to set forth "the specific grounds upon which the motion was based").

During trial, defense counsel's motion for judgment of acquittal advanced only the argument that the evidence before the trial court was purely circumstantial and failed to eliminate all reasonable hypotheses of innocence (Doc. 12-4, Ex. 1, docket pp. 57-76). Never did defense counsel argue there was insufficient evidence showing

Petitioner struck the victim and caused her death (*Id.*).  Consequently, that issue was not preserved for appeal. *See Vargas v. State*, 845 So.2d 220, 221 (Fla. 2d DCA 2003) (finding that while a motion for judgment of acquittal arguably preserved the issue of the defendant's identity as the murderer, it was insufficient to preserve the issue of premeditation). Therefore, appellate counsel cannot be deemed ineffective for failing to raise the issue on appeal. *Farina v. Sec'y, Fla. Dep't of Corr.*, 536 F. App'x 966, 974 (11th Cir. 2013) ("[A]ppellate counsel cannot be ineffective under Florida law for failing to raise an unpreserved error[.]").[2]

Third and finally, Petitioner cannot demonstrate prejudice because had appellate counsel raised this claim on direct appeal, it would not have succeeded. Petitioner was convicted of first-degree felony murder and aggravated child abuse. To prove the crime of first-degree felony murder, the State had to prove these three elements beyond a reasonable doubt: 1) the victim is dead; 2) the victim's death occurred as a consequence of and while Petitioner was engaged in the commission of the felony of aggravated child abuse or the felony of attempted aggravated child abuse; and 3) Petitioner is the person who actually killed the victim (Doc. 12-4, Ex. 1, docket p. 192). To prove the crime of aggravated child abuse, the State had to prove these two elements beyond a reasonable doubt: (1) Petitioner knowingly or willfully committed child abuse upon the victim, and (2) the victim was under the age of 18 years (*Id.*, docket p. 196).  "The term willfully

---

2 Appellate counsel raised the preserved issue that the trial court erred in denying the motion for judgment of acquittal because the State failed to eliminate all reasonable hypotheses of innocence (Doc. 12-4, Ex. 2, docket pp. 281-88).

means knowingly, intentionally and purposely. Child abuse means the intentional infliction of physical injury or the commission of an intentional act that could reasonably be expect to result in physical injury to a child." (*Id.*).

The evidence was sufficient to support Petitioner's aggravated child abuse and first-degree murder convictions because the trial testimony of the State witnesses provided evidence from which a reasonable jury could find him guilty of both offenses beyond a reasonable doubt. The victim's mother testified the victim was "two and a half" years old at the time of the offenses (Doc. 12-3, Ex. 1, docket p. 697). She further testified that when she was at the hospital, she saw the deceased victim had blood in her nose and bruises on her face, including one that appeared to be finger marks, that were not present when she left the victim with Petitioner and her four-year-old son to go to work earlier that night (*Id.*, docket pp. 717-18, 775-76).

Dr. Lee testified the victim had multiple bruises or abrasions on her face, ear, arms, and lower back (*Id.*, docket pp. 805-08). She testified several injuries were consistent with a slap or blow that occurred near the time of the victim's death (*Id.*, docket pp. 808-16). The victim also had a fracture to the back of her skull (*Id.*, docket pp. 830-31). And the injuries to the victim's lungs, liver, and heart were caused, in Dr. Lee's opinion, by a blunt impact to the front of the victim (*Id.*, docket pp. 817-23). In Dr. Lee's opinion, the injuries were consistent with an adult foot stomping on the victim while she was lying on a flat surface and not from a fall in the bathtub (*Id.*, docket pp. 831-33). Moreover, she did not believe that a small child such as the victim's brother

21

could have caused the injuries (*Id.*, docket pp. 875-91). Finally, Dr. Lee testified that the cause of death was a blunt impact to the victim's torso by another person that tore the victim's heart and vena cava (*Id.*, docket p. 799).

Considering the above testimony, there was direct evidence the victim was under the age of 18 when she died from a blow to her torso. And there was circumstantial evidence the victim was physically abused by Petitioner and died because Petitioner intentionally struck her in a manner that could reasonably be expected to injure her. Therefore, there was sufficient evidence supporting the convictions. *See, e.g., Caban v. State*, 892 So. 2d 1204 (Fla. 5th DCA 2005*), cause dismissed*, 909 So. 2d 861 (Fla. 2005) (affirming felony murder and aggravated child abuse convictions based on circumstantial evidence inconsistent with defendant's theories of innocence). Accordingly, appellate counsel was not ineffective in failing to argue there was insufficient evidence to support the convictions.

Petitioner has failed to demonstrate the state appellate court's denial of this claim was contrary to *Strickland* or based on an unreasonable application of the facts. Accordingly, Ground Five warrants no federal habeas relief.

**GROUND SIX: TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR [sic] ABANDONING HIS MOTION FOR A JUDGMENT OF ACQITTAL [sic] AND A MOTION FOR A NEW TRIAL BY FILING A NOTICE OF APPEAL WHILE THE MOTIONS WERE STILL PENDING DIVESTING THE TRIAL COURT OF JURIDICTION [sic] TO RULE ON THE MOTIONS (Doc. 1, p. 10).**

Petitioner contends trial counsel was ineffective because she filed a notice of appeal before the trial court ruled on Petitioner's motion for new trial or renewed

22

motion for judgment of acquittal. He asserts he was prejudiced because the notice of appeal divested the trial court of jurisdiction to entertain the motion, and therefore he was deprived an opportunity for an acquittal or new trial. He implicitly argues the motion would have been granted based on the weight of the evidence that supported his theory that the victim died from a fall while she and her brother were playing in or near the bathtub (Doc. 1, p. 10). Specifically, he states his theory was supported by the victim's mother's testimony that it was not unusual for the victim and her brother to play rough and to play in the bathtub or shower (*Id.*).

A similar claim was raised in state court in Ground Seven of Petitioner's Rule 3.850 motion (Doc. 12-4, Ex. 7, docket pp. 395-97). In denying the claim, the state post-conviction court stated:

> In <u>ground seven</u> of his Motions, Defendant alleges ineffective assistance of counsel for abandoning Motion for New Trial and Judgment of Acquittal. Specifically, Defendant contends that counsel had moved for a new trial and judgment of acquittal, and that doing so would have tolled the time period for filing a notice of appeal, but that counsel then filed a notice of appeal, effectively abandoning the motions pending before the trial court. Defendant contends that the trial court was obligated to relinquish jurisdiction to the appellate court and could not rule on the merits of his claims, as evidenced by the court's Order Dismissing Motion for New Trial and Judgment of Acquittal. Defendant contends that, but for counsel's deficiency, the result of the proceeding would have been different and "defendant would have been discharged from all charges," and asserts that the abandonment of this motion resulted in "depriving the appellate court an opportunity to review and reverse this cause."
>
> A review of the record reflects that, on April 28, 2010, defense counsel filed "Defendant's Notice of Hearing," asserting that it was providing notice to the State of a motion hearing scheduled for May 14, 2014 [sic] on "Defendant's motion for new trial or renewed motion for

judgment of acquittal, previously filed on April 26, 2010." (*See* Defendant's Notice of Hearing," attached). In court on May 14, 2010, the parties discussed this matter as follows:

THE COURT: Let's call Robert James Bradwell, Jr. He is present, is he?

DEF. COUNSEL: Your Honor, I have been told he has been shipped.

THE COURT: He's been shipped out. Okay.

DEF. COUNSEL: Since there's no testimony taken, I'll waive his presence for purposes of this hearing. This is a Motion for New Trial and Motion for Judgment of Acquittal.

THE COURT: Okay. May I see the original, please?

THE CLERK: Judge, it hasn't been filed yet.

THE COURT: Did you file it with the clerk?

DEF. COUNSEL: The original has not been filed?

THE CLERK: No, ma'am.

DEF. COUNSEL: It was filed on April 26th.

THE COURT: I received my copy April 24, it looks like.

THE CLERK: I received a notice of hearing without the motion on April 28th.

DEF. COUNSEL: Do you have your copy, Judge?

THE COURT: Yes, ma'am.

DEF. COUNSEL: I will make sure that they get another copy.

THE COURT: The clerk says the notice was filed but not the motion itself.

DEF. COUNSEL: Well, we had to file the motion because we were running up on the ten days and we couldn't get a date from your office. So

we did file the motion without a notice of hearing date, once we got the hearing date in order to toll the time. Once we got the hearing date we refiled it.

THE COURT: Okay. Assuming that it was filed-

DEF. COUNSEL: Does the State have a copy?

THE STATE: The State has a copy.

THE COURT: Go ahead.

DEF. COUNSEL: Judge, I will make sure that the clerk's office gets a copy of the motion, I apologize.

THE COURT: Go ahead, counsel.

DEF, COUNSEL: Ready, Judge?

THE COURT: Yes, ma'am.

DEF. COUNSEL: May I proceed?

THE COURT: Yes, ma'am.

(*See* Transcript, May 14, 2010, pp. 2-3, attached). The trial court then heard argument from both defense counsel and the State on the motion for new trial and renewed motion for judgment of acquittal. (*See* Transcript, May 14, 2010, pp. 4-17, attached). On May 17, 2010, the Office of the Public Defender filed a letter to the Clerk of Court, outlining as follows:

> On Friday, May 14, 2010, a motion regarding the above-referenced case was heard by the Honorable William Fuente. At that hearing, it was brought to the attention of Assistant Public Defender Theda James that, although Judge Fuente and the Assistant State Attorney both had copies of the motion previously filed, the Clerk did not have the original

motion in the file. To this end, I have enclosed another original of the Defendant's Motion for New Trial or Renewed Motion for Judgment of Acquittal, which was previously filed on April 26, 2010. Attached to this motion is a Notice of Filing, also dated April 26, 2010.

I believe the confusion is due to the fact that at the time of filing this time-sensitive motion, we had not yet received a hearing date. Subsequent to filing the motion, a hearing date was assigned and a Notice of Hearing for the motion was filed separately. I apologize for any inconvenience this may have caused you.

(*See* Letter to the Clerk of Court, attached). Attached to that Letter and also filed on May 17, 2010, was "Defendant's Notice of Filing Defendant's Motion for New Trial or Renewed Motion for Judgment of Acquittal" and "Defendant's Motion for New Trial or Renewed Motion for Judgment of Acquittal." (*See* Notice and Motion, attached). On May 20, 2010, defense counsel filed "Defendant's Notice of Appeal" in this case. (*See* Notice of Appeal, attached). On May 27, 2010, the trial court entered an order in which it dismissed the motion for new trial or renewed motion for judgment of acquittal as follows:

Prior to this Court rendering a ruling, Defendant filed a notice of appeal on 20 March 2010 appealing the final judgment and sentence. [] The motion is deemed abandoned. The Court is without jurisdiction to rule on the motion. See Fla.R.App.P. 9.020(h)(3) ("If such a motion or motions have been filed and a notice of appeal is filed before the filing of a signed written order disposing of all such motions, all motions filed by the appealing party that are pending at the same time shall be deemed abandoned and the final order shall be deemed rendered by the filing of the notice of appeal..."); *Wilson v. State*, 814 So. 2d 1203 (Fla. 2d DCA 2002) (defendant, by filing his notice of appeal, divested the trial court of jurisdiction to enter any further rulings). The instant motion must be dismissed.

(*See* "Order Dismissing Motion for New Trial," attached) (alteration in

original).

26

The Court notes that, as outlined in the trial court's May 27, 2010, Order, at the time of Defendant's trial, the filing of a notice of appeal prior to the filing of the signed written order disposing of a pending motion for new trial constituted an abandonment of that pending motion. *See* Fla. R. App. P. 9.020(h)(3) (2009). As such, defense counsel was deficient in filing the notice of appeal before the entry of a signed written order disposing of the motion for new trial, as such deprived the trial court of jurisdiction to rule on that motion. However, the Court finds that Defendant was not prejudiced as a result, as there is not a reasonable probability that the outcome of Defendant's trial would have been different but for counsel's deficiency. More specifically, the Court finds that, even if the trial court had jurisdiction to address "Defendant's Motion for New Trial or Renewed Motion for Judgment of Acquittal" on the merits, after review of that Motion, the arguments raised at the May 14, 2010, hearing thereon, and the testimony and evidence presented at trial, this Court does not believe nor find there to be a reasonably probability that the trial court would have granted a new trial or judgment of acquittal. (*See* "Defendant's Motion for New Trial or Renewed Motion for Judgment of Acquittal;" Transcript, May 14, 2010, pp. 4-17; Transcript, April 13, 2010, pp. 316-569; Transcript, April 14, 2010, pp. 582-726, 752-789, attached). Additionally, to any extent Defendant is alleging that counsel's deficiency resulted in the failure to preserve a matter for appeal, the Court notes that no relief is warranted on this claim. *See Strobridge v. State*, 1 So. 3d 1240, 1242 (Fla. 4th DCA 2009) (explaining that "[t]he prejudice in counsel's deficient performance is assessed based upon its effect on the results at trial, not on its effect on appeal," and that the "[f]ailure to preserve issues for appeal does not show the necessary prejudice under *Strickland* [*v. Washington*, 466 U.S. 668 (1984)]"). As Defendant cannot show prejudice as a result of counsel's deficiency as alleged in ground seven, **ground seven of Defendant's Motions for Post-Conviction Relief must be denied.**

(Doc. 12-4, Ex. 10, docket pp. 509-13) (footnote omitted).

Under Florida law, a motion for new trial provides a "safety valve" when

technically sufficient evidence proves the criminal offense, but the weight of the

evidence does not appear to support the verdict. *See State v. Shearod*, 992 So. 2d 900, 904

(Fla. 2d DCA 2008). The weight of the evidence standard used to evaluate a motion for

new trial tests whether a greater amount of credible evidence supports one side of an issue or the other. *Tibbs v. State*, 397 So. 2d 1120, 1123 (Fla. 1981); *Geibel v. State*, 817 So. 2d 1042, 1044 (Fla. 2d DCA 2002).

The record demonstrates the greater amount of credible evidence would have supported the verdict finding Petitioner guilty and the motion would have been denied. Although there was evidence that the victim's brother said the victim was playing and fell in the bathtub (*see* Doc. 12-3, Ex. 1, docket pp. 582, 589, 616, 625, 762), there was no evidence that the alleged fall caused the victim's extensive injuries. Dr. Lee's opinion was the injuries to the victim's internal organs that caused her death were not caused by a fall in a bathtub (*Id.*, docket p. 831). Rather, in her opinion the injuries were inflicted by another person (*Id.*, docket p. 799). The trial court used Dr. Lee's opinion to find that Petitioner's hypothesis that the victim's injuries were caused by a fall in the bathtub was not reasonable and to deny Petitioner's motion for judgment of acquittal (Doc. 12-4, Ex. 1, docket pp. 80-81).

Petitioner cannot show prejudice because he fails to demonstrate a reasonable probability exists that if counsel had not filed a notice of appeal, the trial judge would have granted the motion for a new trial or renewed motion for judgment of acquittal. Because he fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts in denying his ground of ineffective assistance of counsel, Petitioner is not entitled to federal habeas relief on Ground Six.

**GROUND SEVEN: TRIAL COUNSEL RENDERED INEFFFECTIVE ASSISTANCE FOR FAILING TO CALL DR. MARK SHUMAN, A FORENSIC PATHOLOGIST AS AN EXPERT TO TESTIFY THAT THE VICITM'S [sic] CAUSE OF DEATH WAS NOT FROM AN INJURY TO THE HEART AS THE STATE PRESENTED (Doc. 1, pp. 11-12).**

Petitioner contends counsel was ineffective in failing to call Dr. Mark Shuman to testify at trial. Dr. Shuman was a forensic pathologist with whom defense counsel consulted regarding the victim's cause of death. According to Petitioner, Dr. Shuman would have testified that the injury to the victim's head, rather than to the victim's heart, was the cause of death, and that the injury to the victim's heart was consistent with medical personnel vigorously compressing the victim's chest during CPR. Petitioner argues this testimony contradicted the State's expert's opinion as to the cause of death and supported his theory of defense that the victim died from a head injury sustained when she hit her head after she fell in the bathtub. He opines that had Dr. Shuman testified, the jury would have found him not guilty of either charge.

This claim was raised in state court in Ground Two of Petitioner's Rule 3.850 motion (Doc. 12-4, Ex. 7, docket pp. 381-83). In denying the claim after an evidentiary hearing, the state post-conviction court stated:

In ground two of his Motions, Defendant alleges ineffective assistance of counsel for failure to call Dr. Shuman as an expert witness. Specifically, Defendant contends that his trial counsel, Ms. James, had "made contact with Dr. Mark Shuman, Forensic Pathologist and listed him as an expert witness on behalf of the defendant, but then failed to call Dr. Shuman to testify, rendering her performance deficient." Defendant contends that Dr. Shuman "would have testified that in his opinion the victim's cause of death was not the injury to the heart. The injury looks more like the artifact of resuscitation efforts. The cause of death could be an acute head injury. The head injury would be consistent with the fall and the child going to sleep and not waking up." Defendant asserts further that "Dr. Shuman was and is now available to testify and would be willing to testify to these facts," and that "[h]ad counsel called Dr. Shuman to testify his testimony would have contradicted the state's expert, cast reasonable doubt on the jury and changed the outcome of the trial." In his "Supplemental Authority," Defendant argues that

> trial counsel failed to present certain medical evidence during trial and [s]he failed to call a particular expert medical examiner to testify. In the present case, Dr. Shuman would have verified that the victim's cause of death was more likely an acute head injury consistent with a fall, which was consistent with the Defendant's defense that the child accidentally fell while playing in the bathtub and this evidence would have contradicted the State's theory of death. Dr. Shuman's testimony was also crucial because his opinion of the medical examiner's report that the cause of death was blunt impacts to the torso with lacerations of the heart and inferior vena cava was more likely the results of unsuccessful CPR efforts. Lastly, the Defendant was prejudiced by trial counsel's deficient performance because, had this evidence been presented to the jury, there is a reasonable probability that the Defendant would have been acquitted of First Degree Felony Murder and Aggravated Child Abuse, and instead found guilty of Manslaughter or Not Guilty.

In its October 7, 2015 Order, the Court outlined that Ms. James was clearly aware of this witness as a potential defense expert in this case, and that the scheduling of this potential witness's deposition had been discussed on the record. The Court then found this allegation to be facially sufficient,

and noted that, although an evidentiary hearing may be warranted on this claim, it must first order the State to respond.

In its October 20, 2015 Response, the State asserted that it deposed Dr. Shuman on March 10, 2010, and that his deposition testimony - attached as an exhibit to the State's Response - supports that Ms. James's decision not to ultimately call this witness at trial was most likely a strategic one. The State acknowledged, however, that "the deposition is not a part of the record and, as such, cannot be the basis for summarily refuting the defendant's claim. As such, the State agree[d] with the Court that an evidentiary hearing may be warranted on this claim."

At the May 6, 2016 evidentiary hearing, Defendant testified that before he went to trial, Ms. James told him that she had retained Dr. Shuman as an expert witness but never elaborated on the details of his expert opinion regarding Defendant's defense or the victim's cause of death. *See* EH Transcript, pp. 8-9, attached. He also testified that she did not tell him that she did not intend on calling Dr. Shuman as a witness until trial and that she did not explain her reasoning for precluding him. *See* EH Transcript, pp. 17-18, attached. He stated that he had no idea prior to trial what Dr. Shuman would potentially testify to and that he did not see Dr. Shuman's deposition testimony until he was in prison - after he had been convicted. *See* EH Transcript, pp. 8-9, 18, attached. Had he seen the deposition earlier, Defendant asserted he would have wanted Dr. Shuman to testify at trial. *See* EH transcript, p. 18, attached.

Through the deposition transcript, Defendant testified, he learned that Dr. Shuman believed the cause of death was a brain hemorrhage and bad CPR efforts - which was consistent with his theory of defense and inconsistent with the State's theory that the victim died by blunt force trauma to the chest area. *See* EH transcript, pp. 10-11, attached. He proceeded to explain his version of events:

> It was - like, I was outside talking to Mr. Grant and the kids was in the bathroom and my oldest son came out and said that she fell by playing - or hit her head and fell in the bathroom. They was [sic] in there playing. So I jumped up and ran in the house and she had like a nosebleed and I put pressure on her nose to stop the nosebleed and she was fine. Then I guess they went in there and went to bed and

when I went back in to feed them she was very unresponsive,
so I took her to the hospital.

*See* EH Transcript, p. 12, attached. He clarified that he never saw the
victim fall in the tub, but that his four-year-old son told him what
happened. *See* EH Transcript, p. 13, attached. In addition, he testified that
he and his girlfriend were present when CPR was conducted on the victim
at the hospital, and it looked to them that "they was pressing so hard on
her" and his girlfriend [the victim's mother] "told one of the nurses that that
ain't a way you administer CPR on a baby. They was pressing like they
was doing CPR on an adult." *See* EH Transcript, pp. 13-14, attached.

Ms. James also testified at the evidentiary hearing. She outlined her
extensive trial experience - including as an assistant public defender since
1993 - which centers primarily on capital death penalty cases and "baby
cases," like the one at hand. *See* EH Transcript, pp. 40-41, attached. With
respect to Defendant's case, she testified that she exhausted two expert
witnesses before she got to Dr. Shuman. *See* EH Transcript, p. 42, attached.
Specifically, she retained Dr. Brian Woodruff, a neurologist, and Dr.
Ronald Wright, a pathologist, both of whom gave her unfavorable
opinions. *See* EH Transcript, p. 42, attached. She then consulted with Dr.
Shuman, providing him immediately with Defendant's version of events.
*See* EH Transcript, p. 43, attached.

On November 24, 2009, Dr. Shuman told her after he had reviewed
the material she had sent him that "he believed the medical examiner got
the cause of death wrong." The victim had a contusion to her head,
including a break of the skull bone, but she also had an injury to her heart,
her liver, and other internal organs. *See* EH Transcript, p. 44, attached. The
medical examiner, Dr. Jacqueline Lee, opined that the cause of death was
blunt trauma to the torso. *See* EH Transcript, p. 44, attached. Dr. Shuman
initially disagreed with her theory, positing that the victim's head injury
was so severe that it - not injury to the chest - was actually the cause of
death. *See* EH Transcript, p. 44, attached. He also believed the head injury
could have been caused by a fall and that, consistent with Defendant's
story, she could have gone to sleep and not woken up. *See* EH Transcript,
p. 43, attached. In addition, Dr. Shuman opined that the injuries to the
victim's internal organs and the torso may have been caused by incorrect
CPR. *See* EH Transcript, p. 44, attached.

After Dr. Shuman gave Ms. James his initial impression, he asked to review the histological slides; on February 4, 2010, after he had reviewed the slides, he informed her that his opinion had not changed. *See* EH Transcript, p. 43, attached. Ms. James proceeded to list Dr. Shuman as a witness, and the State deposed him on March 10, 2010. He began his testimony in a manner that aligned with Defendant's statements to law enforcement. *See* EH Transcript, pp. 45-46, attached. However, as the deposition progressed, he started to relay "bad facts" that were not favorable to Defendant's case. *See* EH Transcript, p. 46, attached. Dr. Shuman ultimately opined that he was leaning toward homicide as a manner of death - an opinion inconsistent with what Ms. James was prepared for. *See* EH Transcript, p. 46, attached. Moreover, Dr. Shuman testified that he was suspicious of old injuries to the victim's head and stated that he was suspicious of Defendant's version of events. *See* EH Transcript, p. 47, attached.

Immediately after the deposition, Ms. James resolved that she would not call Dr. Shuman as a witness at trial. *See* EH Transcript, p. 48, attached. On the same day, she went to the jail and advised Defendant of what had transpired and eventually sent him a copy of Dr. Shuman's deposition testimony. *See* EH Transcript, p. 48, attached. Moreover, she explained to him the alternate theory she was going to use at trial since they no longer had an expert witness to rely on. *See* EH Transcript, p. 48, attached. In particular, she intended to use the medical examiner's (Dr. Lee's) testimony to support their theory of defense; during her deposition, she gave Ms. James enough to create another reasonable explanation for the victim's injuries. *See* EH Transcript, p. 48, attached. Though Dr. Lee did not believe the victim's head injuries caused her death, the things she said in her deposition and at trial were consistent with Defendant's theory - that the victim's injuries to the chest could have been caused by another child jumping on her. *See* EH Transcript, p. 48., attached. Ms. James emphasized that she used the State's own expert to support her theory of defense, that this argument formed the thrust of her closing argument, and that she succeeded in moving the Court to read a non-standard circumstantial evidence jury instruction to the jury to help solidify the defense. *See* EH Transcript, pp. 49-50, attached.

Ms. James concluded her testimony on direct examination by stating that her decision not to call Dr. Shuman was a strategic one[.] *See* EH Transcript, p. 51, attached. In fact, had she known Dr. Shuman was going to testify at his deposition in a manner unfavorable to Defendant's theory

of defense, she never would have listed him as a witness. *See* EH Transcript, p. 47, attached. She once again clarified that Defendant immediately knew of her decision not to call Dr. Shuman and that he received a copy of the deposition transcript prior to trial. *See* EH Transcript, p. 51, attached.

After Defendant's 3.850 counsel cross examined Ms. James about the particulars of Dr. Shuman's deposition testimony in contrast to Dr. Lee's deposition and trial testimony, Ms. James expressed her belief that Dr. Shuman could not have been rehabilitated as a witness because he called into question Defendant's credibility. *See* EH Transcript, pp. 52-65, attached. She knew he was not going to be a good witness because he did not believe anything about the case. *See* EH Transcript, p. 65, attached. She also believed it would hurt Defendant's case more to put on an expert that clearly would not have been a friendly expert. *See* EH Transcript, p. 68, attached. In addition, she knew the State could impeach Dr. Shuman with his deposition testimony at trial even if he backed off of his unfavorable opinion. *See* EH Transcript, pp. 75-76, attached.

After considering both Defendant's and Ms. James's testimony at the evidentiary hearing, the Court finds Ms. James's testimony to be more credible than that of Defendant. In particular, the Court finds convincing her testimony that she kept Defendant updated on the progress of the case, particularly with regard to Dr. Shuman's deposition testimony and her decision not to call him at trial. Defendant has thus failed to establish any deficiency on counsel's part in this respect. More importantly, having considered Ms. James's testimony in light of Dr. Shuman's below described deposition testimony, the Court finds Ms. James's decision not to call Dr. Shuman at trial constituted reasonable trial strategy.

At his deposition, Dr. Shuman indicated that his understanding of Defendant's version of events - as conveyed to him by Ms. James - was that the victim's four-year-old brother reported that his sister fell in the bathtub; Defendant examined her for injuries, found nothing significant, and put her to bed. *See* State's Exhibit 1, p. 10, attached. She was later found to be unresponsive and taken to the hospital, where she was pronounced dead a few hours later. *See* State's Exhibit 1, p. 10, attached.

When asked initially what conclusion he had reached as to the victim's cause of death, Dr. Shuman expressed his belief it was a blunt head injury. *See* State's Exhibit 1, pp. 16-18, attached. He testified that the victim

had a fracture on the back of her skull with a large bruise in the scalp, contusions of the brain, and a swollen brain. *See* State's Exhibit 1, p. 19, attached. He also indicated that the injuries the medical examiner attributed to the cause of death appeared to have been caused by the CPR. *See* State's Exhibit 1, p. 19, attached. In particular, he expressed his belief that the victim was already essentially dead when she was admitted to the hospital and that all the CPR caused the internal injuries of the internal organs of the chest and abdomen. *See* State's Exhibit 1, pp. 19-20, attached. The implication of this testimony was that Dr. Lee inaccurately identified the cause of death.

The State proceeded to question Dr. Shuman at great length about the various head injuries the child victim had sustained, how they could have contributed to her death, and the timeline of the injuries as relative to the victim's death. *See* State's Exhibit 1, pp. 22-64, attached. The State asked Dr. Shuman if the victim could have suffered the blunt force trauma to her head by sitting in a tub or on a tile floor and then falling backwards (as it appeared Defendant's theory of the case was). *See* State's Exhibit l, pp. 65-66, attached. Dr. Shuman responded that this scenario was "unlikely." *See* State's Exhibit 1, p: 65, attached. Dr. Shuman at some point noted that if the chest and abdominal injuries were "real" - i.e. not caused by the CPR - then they would have definitely been part of the cause of death. *See* State's Exhibit 1, pp. 70-71, attached. The State inquired why Dr. Shuman thought the chest injuries were caused by CPR: he acknowledged it was "rare" and "unusual" for children to suffer injuries from CPR, but he opined that based on how much he believed the victim had bled into her abdomen, the bleeding was surely the result of CPR. *See* State's Exhibit I, pp. 74-78, attached.

The State continued to question Dr. Shuman about how he determined the chest injuries were caused by CPR as opposed to by some other means that led to the victim's death. *See* State's Exhibit 1, pp. 78-90, attached. Dr. Shuman eventually conceded that blood clots in the victim's abdominal area indicated that the abdominal injuries were caused prior to death - and not as the result of CPR (which, in turn, would tend to indicate that the abdominal injuries contributed to the death). *See* State's Exhibit l, pp. 89-90, attached. He also testified that he had never seen injuries to a child from CPR of this extent. *See* State's Exhibit 1, p. 94, attached.

Towards the end of the deposition, the following exchange transpired between Dr. Shuman and the State:

THE STATE: Doctor, since your opinion is that that was caused by CPR - or I'm sorry - from injury to the brain, would your opinion be that this manner of death is homicide or that it's accident or it's undetermined?

DR. SHUMAN: Actually, I kind of lean towards homicide, You know, while this type of injury could occur as described with a fall, there are other things about this. You know, there's multiple bruises. There's [sic] multiple old contusions in the brain. And, frankly, there is no corroboration with the story. If the story as given had corroboration with the child's older sibling, which I apparently wasn't able to be gotten any kind of information from him, or even by the neighbor, and though he gives a similar story, it's not the same, you know, it's not consistent enough in my mind to think that - you know, for me to take it as credible. I'm leaning towards homicide, especially because of all the other things going on.

THE STATE: When you say all the other things going on, what do you mean by that?

DR. SHUMAN: I mean, you know, I've never seen a child with old brain contusions. You know, there are a lot of other bruises on her body that while could have innocuous, you know, meanings, they bring up - they raise a suspicion. So, you know, having old injuries like the old contusions, having multiple bruises that you have raises the suspicion. And, you know, the story not being able to be corroborated makes me - I don't know if I can believe it. So, you know, I am - and then, you know, in children we usually default to homicide when we don't know what the cause is. You know, if we have a head injury in an adult like this, we would default to accident and say that the person probably fell. In a child we usually default to homicide because somebody is supposed to be caring for them and should know what happened. So usually we default towards homicide. But I think there's too much here and I'm leaning towards homicide.

*See* State's Exhibit 1, pp. 104-06, attached.

Under *Strickland*, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Schoenwetter v. State*, 46 So. 3d 535, 553 (Fla 2010) (quoting *Strickland*, 466 U.S. at 689). "The defendant carries the burden to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks omitted). "Strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Id*. (quoting *Occhione v. State*, 768 So. 2d 1037, 1048 (Fla. 2000)).

The progression of Dr. Shuman's deposition testimony, which cast doubt on Defendant's theory of the case and culminated in his explicit assertion that he believed the victim died as the result of a homicide, rendered him an unfavorable defense witness. Given that the State would have been able to impeach Dr. Shuman with his deposition testimony at trial - even if Ms. James succeeded in getting him to reconsider the opinion he proffered at the conclusion of his deposition - it was reasonable for her to conclude that his expert opinion would do more harm than good. It was also reasonable of her to determine that Dr. Shuman could not be sufficiently rehabilitated after he called Defendant's credibility into question. It follows, then, that her decision not to call him at trial was reasonable.

The Court's assessment of Ms. James's performance is bolstered by her testimony regarding the seemingly well-thought-out approach she ultimately took to mounting a defense on Defendant's behalf. Faced with the reality that Dr. Shuman's testimony would operate to Defendant's detriment at trial, she found a way to rely on the State's own witness to provide another reasonable explanation for the child's death - one that was consistent with Defendant's version of events. In particular, she built a theory of defense based on the circumstantial nature of the case and Dr. Lee's deposition testimony that the victim's injuries to the chest could have been caused by another child jumping on her. *See* Trial Transcript, pp. 834-61, attached. Ms. James's decision not to call Dr. Shuman was a strategic decision that was certainly reasonable under the circumstances of the case - particularly in light of the other avenues of defense she had at her disposal - and under the norms of the profession. **Defendant has failed to meet his**

**burden under *Strickland*, and ground two must be denied. *See Schoenwetter*, 46 So. 3d at 553.**

(Doc. 12-7, Ex. 14, docket pp. 5-15) (footnote omitted).

Petitioner fails to show the state post-conviction court unreasonably applied *Strickland* in finding counsel made a reasonable strategic decision to not call Dr. Shuman. That decision clearly was a matter of trial strategy (Doc. 12-6, Ex. 13, docket p. 428). "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). *See also Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). A tactical decision amounts to ineffective assistance "only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

The reasonableness of defense counsel's decision is supported by the evidentiary hearing testimony, and Dr. Shuman's deposition testimony, discussed in the state post-conviction court's order. Although Dr. Shuman initially gave counsel a "favorable opinion" regarding the cause of death (*id.*, docket p. 420-21), much of his testimony during his deposition was "not favorable" to the defense (*Id.*, docket p. 423). For example, Dr. Shuman's testimony that in his opinion the victim's death was a homicide (caused by another person), rather than accidental (such as a fall in the bathtub), was

very unfavorable (Doc. 12-7, Ex. 14, docket pp. 218-19). Moreover, he testified that he believed Petitioner's account of the events was *not* credible (*Id.*, docket pp. 219-21). Finally, although Dr. Shuman initially testified that in his opinion the injury to the head caused the victim's death, and the internal injuries to the victim's heart, liver, and abdomen were caused by CPR after the victim died, he conceded he had never seen or heard of a child sustaining such extensive injuries from CPR, the injuries were consistent with someone stomping his foot down on the victim as she was lying on the floor, the internal injuries caused the victim's death if they were not sustained during CPR, and the blood clots found near those injuries suggested they were *not* caused by the CPR (*Id.*, docket pp. 184-85, 199, 204, 210).

After Dr. Shuman's unfavorable deposition, counsel decided to not call him as a witness and instead use an alternative theory: the victim's brother caused the injuries by jumping on the victim (Doc. 12-6, Ex. 13, docket pp. 424-25). Petitioner fails to demonstrate this strategic decision was unreasonable. *See Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000) ("[C]ounsel's reliance on particular lines of defense to the exclusion of others-whether or not he investigated those other defenses-is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable."). The alternative theory was supported by the State's expert, Dr. Lee, who conceded that the victim's injuries could have been caused by another child jumping on the victim, and the victim's mother's testimony that the victim and the victim's brother often played rough with each other (*Id.*, docket p. 425). This Court

cannot conclude that no competent counsel would have taken the action that defense counsel did. *See Chandler*, 218 F.3d at 1315 (to establish that trial counsel was constitutionally ineffective, a petitioner must show that "no competent counsel would have taken the action that his counsel did take.").

Petitioner has failed to demonstrate the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground Seven warrants no relief.

It is therefore **ORDERED** that:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**.

2. The **Clerk of the Court** is directed to enter judgment accordingly and close this case.

3. This Court should grant an application for a Certificate of Appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). He cannot make this showing. Accordingly, a Certificate of Appealability is **DENIED**.  And because Petitioner is not entitled to a Certificate of Appealability, he may not proceed on appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida on August 31, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner, *pro se*

Counsel of Record